UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | | |
|---|---|---|
| LESTER LEE BYRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  CV613-063 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| *Acting Commissioner of Social* | ) | |
| *Security,* | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Lester Lee Boyd appeals the Social Security Commissioner's denial

of his application for Supplemental Security Income (SSI). Doc. 1.[1]

That denial followed Byrd's submission of his testimony and medical

and other records to the Commissioner, and an administratively

reviewed Administrative Law Judge (ALJ) ruling.   Doc. 16-2 at 2-21.

## I.  BACKGROUND

Byrd, 43 at the time he testified in support of his SSI application,

is a 1986 high school graduate who testified that he has no difficulty

---

[1]   All documents referenced here have been "E-filed."  The Court is thus using the
electronic pagination placed on the top of each page by the Court's CM/ECF software.
It may not line up with pagination on the original, printed page of each document.

reading, writing, and doing simple math. Doc. 16-2 at 18, 35-36. He claimed he was in regular, not special education, classes in high school, *id.* at 42, but the ALJ found him not credible on this point. *Id.* at 19 (citing claimant's disclosure to others that he'd attended "special education classes" in high school). Although he also claimed no alcohol or drug abuse, *id.* at 43-44, 55, the ALJ found that he "has a history of alcohol abuse" and noted one doctor's recommendation to "seek substance abuse counseling. . . ." *Id.* at 18; *see also* doc. 18 at 58 ("11/05-Social Hx: Pt drinks alcohol and is known to use cocaine, denies for last several days"); *id.* ("5/08-DX: Alcohol Abuse, R/O Substance induced Psychotic bx. . . ."); *id.* at 84 (2010 report: "he continues to abuse alcohol. . . ."). He did cattle-farm work in 2003-2004, *id.* at 36, and that included riding the range, operating a tractor, fixing fences, etc. Doc. 16-2 at 37. He was able to lift items like pecan sacks weighing up to 100 pounds. *Id.* at 39.

Byrd reports that he has not worked "since around 2006 or 2007" because he fell ill ("bleeding ulcers"), required a 2007 hospitalization, and was put "on all kind of medicines and stuff." *Id.* at 44, 49. He also testified that "I hear voices." *Id.* at 45. He has schizophrenia,

which runs in his family (father, brother). *Id.* at 45, 66-67. It produces "anxiety and delusions and paranoia and irritability." *Id.* at 53. Medicine helps but he says he still hears voices and has hallucinations. *Id.* at 45, 46. He takes Zantac for his stomach, "Inderal for high blood pressure," *id.* at 49, "Risperdal for the mental issues," *id.*, and "Cogentin and Seroquel" for his "schizophrenia and emotional problems." *Id.* at 45. He says these medicines make his hands shake and drop things. *Id.* at 50.

Byrd testified that he presently can lift no more than 10 pounds. Doc. 16-2 at 50. Shoulder and back pain keep him from lifting anything. *Id.* at 60. He at most can walk about 100 yards, "then I give out and I have to sit down and rest." *Id.* at 51. He says he can sit for "[p]robably 30 minutes or an hour." *Id.* He also has "congenitally tight hamstrings." *Id.* at 76. And he can stand only "[a]bout 30 minutes, 15 minutes." *Id.* Finally, he suffers from anemia and recently has gained a lot of weight -- he attributes that to his medicines. *Id.* at 52, 56-57, 60. He claims disability beginning January 21, 2007, but does not dispute that he at most can obtain benefits starting from his September 15, 2009 filing date. Doc. 16-2 at 13.

After reviewing Byrd's medical records and testimony, the ALJ consulted with a Vocational Expert (VE) before finding that plaintiff could return to his past relevant work as a harvest worker, is not under a "disability," and thus is not entitled to SSI. Doc. 16-2 at 17-21.

## II.  STANDARD OF REVIEW

Affirmance of the ALJ's decision is mandatory if his conclusions are supported by substantial evidence and based upon an application of correct legal standards. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotes and cites omitted). It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotes omitted). And if substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). The Court cannot substitute its judgment for that of the Commissioner. *Barnes v.*

4

*Sullivan*, 9x32 F.2d 1356, 1357-1358 (11th Cir. 1991). Nor may it "reweigh the evidence or make new factual findings." *Brown v. Commissioner of Soc. Sec.*, 459 F. App'x 845, 846 n. 1 (11th Cir. 2012).

The burden of proving disability lies with the claimant. 20 CFR § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To determine whether he has met his burden, the Court looks to the five-step evaluation process set forth in the Social Security Regulations. 20 CFR § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that he has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, he must demonstrate a severe impairment or combination of impairments. *Id.*

Then, at step three, if the claimant's impairment meets or equals what is known as a "listed impairment" (found in SSA regulations, these describe physical or mental impairments like psychotic disorders), he is automatically found disabled. *Id.* If not, he must advance to step four, which requires him to prove an inability to perform past relevant work. *Id.* If he has never worked, or cannot perform past relevant work, then he goes to step five, which shifts the burden to the Commissioner to show

that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.*

## III. ANALYSIS

### A. VE Testimony

"Plaintiff asserts that the ALJ erred in failing to properly question or apply the testimony of the [VE] and in failing to credit the testimony of [his] treating psychiatrist Dr. David Bate." Doc. 20 at 4. The VE's testimony, he insists, "was unsupportable and the ALJ made no alternate findings for step five of the sequential process," so "the matter must be remanded for additional vocational testimony." *Id.* at 6.

Byrd's contentions are best understood by first retracing the ALJ's analysis. Byrd made it to step three, for he demonstrated a severe impairment or combination of impairments and that he had not engaged in substantial gainful activity. If, at that step, a claimant has a severe impairment[2] that does not meet or equal the severity of a listed

---

[2] As was recently explained:

The term "severe" has dual uses in the five-step analysis. At step two, it means a condition that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment is

6

impairment, then the ALJ proceeds to step four and assesses his

Residual Functional Capacity (RFC), which measures whether he can

perform past relevant work despite the impairment.[3] Only if he is

unable to do past relevant work does the ALJ proceed to the fifth and

final step of the evaluation process to determine whether, in light of his

RFC, age, education, and work experience, he can perform other work

in the national economy. *Hicks*, 2014 WL 357373 at * 3. The ALJ can

consult with a VE on those last two steps.

Here the ALJ determined that Byrd's schizophrenia and other

ailments were "severe impairments" but that, singularly or in

combination, they did *not* meet or medically equal one of the listed

impairments found in 12.03, 12.04, and 12.09 of 20 C.F.R. Part 404,

---

significant when its effect on the claimant's ability to perform basic work
activities is "more than slight or minimal." *Edwards by Edwards v. Heckler*, 755
F.2d 1513, 1515 (11th Cir.1985). At step three, "severity" refers to the degree of
impairment. If a disability is sufficiently severe at step three, the ALJ need not
consider a claimant's [Residual Functional Capacity (RFC)] to find h[im]
disabled; if not, he must perform an RFC [analysis] to make that determination.
20 C.F.R. § 404.1520(d).

*Hicks v. Colvin*, 2014 WL 3573732 at * 3 n. 2 (N.D. Ga. July 21, 2014). Here the
step-two severe impairment was not sufficiently step-three severe, so the ALJ *did*
consider Byrd's RFC.

[3] More broadly, RFC "is a medical assessment of what the claimant can do in a work
setting despite any mental, physical or environmental limitations caused by the
claimant's impairments and related symptoms." *Peeler v. Astrue*, 400 F. App'x. 492,
493 n. 2 (11th Cir. 2010); *Noguera*, 2014 WL 3359374 at * 2.

Subpart P, Appendix 1. Doc. 16-2 at 15-16. Those impairments did

"cause more than a minimal impact on [his] work-related functioning,"

the ALJ found, doc. 16-2 at 15, but he evaluated each one of them (e.g.,

Byrd's claimed borderline intellectual functioning, which the ALJ

found to be a malingering-based exaggeration, *id.* at 15) in determining

that plaintiff has an RFC to perform medium work with limitations.

*Id.* at 16-17. This finding then required the ALJ to proceed to the

fourth step to determine whether Byrd would be unable to perform his

past relevant work. 20 C.F.R. § 416.965; *Miodonski v. Colvin*, 2014 WL

3656271 at * 1 (S.D. Fla. July 22, 2014). Here, the ALJ consulted a VE

and found that Byrd *could* return to his past relevant work as a harvest

worker. He thus was not disabled. Doc. 16-2 at 20.

Again, Byrd insists that the ALJ's decision is not supported by

substantial evidence, as it failed to properly analyze medical opinions

and posed a deficient hypothetical to the VE. Doc. 20 at 4-6, 9. He

invokes *Winschel*, which requires that the ALJ's hypothetical question

include all of the claimant's impairments. 631 F.3d at 1180.[4] He then

---

[4] That is correct -- VE hypotheticals must be properly formulated. *Compare Jarrett v. Commissioner of Social Security*, 422 F. App'x 869, 871 (11th Cir. 2011) ("ALJ's hypothetical questions adequately accounted for Jarrett's impairment in

illuminates the ALJ's question here. The ALJ told the VE to assume that claimant was a high-school educated, 43-year-old "able to read, write, and perform simple mathematical computations." Doc. 16-2 at 76. He also has congenitally tight hamstrings. He should be limited to medium exertional work activities that never require him to climb ladders, ropes, or scaffolding. He can individually sit, stand, walk, push and/or pull for *at least six* of eight hours each eight-hour workday. *Id.* (emphasis added). In addition, the claimant "can lift/carry 50 pounds occasionally, defined as up to a third of an eight-hour workday, and 25 pounds frequently, for up to two-thirds of an eight-hour workday." *Id.* Further, his schizophrenia and alcohol abuse would limit him to performing work activities with a specific vocational

---

concentration, persistence, and pace") *with Salter v. Colvin*, 2014 WL 1315645 at *10 (S.D. Ala. Mar. 31, 2014) ("This Court is unable to find that the ALJ's hypothetical questions fully accounted for claimant's moderate limitations in concentration, persistence and pace . . . [and therefore] the VE's testimony is not 'substantial evidence' and cannot support the ALJ's conclusion that Salter can perform those jobs identified by the VE."), *and Miodonski*, 2014 WL 3656271 at * 6 ("The ALJ presented two hypotheticals to the VE: one that included limitations secondary to psychiatric symptoms that would prevent the hypothetical individual from completing a normal work day and normal work week, and one that did not. . . . Thus, without providing an explanation, the ALJ selectively excluded a significant portion of Dr. Peterson's assessment, which, in light of the VE's testimony, would have mandated a finding of 'disabled.' This constitutes reversible error.").

preparation code (SVP)[5] of between 1 and 3. "While his concentration

may drift for *up to one-third* of an eight-hour workday if the work is

repetitive, routine, or boring, he can pay enough attention to details to

meet the general productivity requirements of the job within the same

workday." *Id.* at 77 (emphasis added). Finally, he should avoid

constantly changing or fluid work environments. *Id.*

The VE concluded that such a claimant could return to "medium"

level work (hence, "harvest worker, fruit, as per the [Dictionary of

Occupational Titles], which is medium."). Doc. 16-2 at 77-78. The

ALJ then posed to the VE a second hypothetical,

> for an individual who's of the same age and education, he has
> the same age and education, he has the same physical, postural
> and environmental limitations as given in the first
> hypothetical. This time, his schizophrenia is going to limit
> him *again* to performing work activities with no greater SVP
> than 1 to 3. However, not only is his concentration going to
> drift but his attention to detail and ability to perform work are

---

[5]  As was recently explained:

SVP refers to the DOT term "Specific Vocational Preparation" and refers to the
length of time it takes to learn a job. Dictionary of Occupational Titles,
Appendix C (4th Ed., Revised 1991). An SVP of 1 involves a short
demonstration; SVP 2 involves anything beyond short demonstration up to and
including one month; SVP 3 involves over one month and up to and including 3
months. *Id.*

*Miodonski,* 2014 WL 3656271 at * 4 n. 1; *see also Noguera v. Colvin,* 2014 WL 3359374
at * 11 n. 7 (S.D. Ala. July 9, 2014).

going to be off task for *up to a third* of an eight-hour workday.

And now, it may not be the entire one-third every day, but it will be unpredictable, and over a 40-hour work week, we're looking at somewhere between *a quarter and a third*, that period of time being off task. Again, he should avoid constantly changing or fluid work environments. Within the parameters of that hypothetical, sir, would that individual be able to perform Mr. Byrd's past activities as a fruit harvest worker?

Doc. 16-2 at 78 (emphasis added).

The VE answered: "Well, if he's off task for a quarter to a third of an eight-hour workday and unpredictable in that, especially with an unskilled job, people are not going to maintain that person on the payroll. So in my opinion, he would *not* be able to maintain any competitive work with that limitation." *Id.* (emphasis added).

The ALJ obviously based his RFC, and thus his ultimate ruling, on the first hypothetical. *Id.* at 17-18. He explained in detail the basis for that, including Byrd's testimony, that of his sister, the fact that his schizophrenia can be controlled by medication, and that he was not credible and in fact has exaggerated his deficits. *Id.* at 18-20. He expressly discounted the opinion of treating psychiatrist David Bate,

M.D.,[6] who had not been Byrd's treating physician since 2004, only

recently (in seeming conjunction with Byrd's SSI claim) saw him, and

issued a "disability" assisting assessment after he apparently did *not*

review any prior medical reports from any prior physicians or facilities.

*Id.* at 20. Thus, the ALJ found, Byrd retained enough RFC to go back

to his prior work. *Id.*

Challenging that result, Byrd argues that

> [b]oth hypothetical questions reflect that Plaintiff's
> "concentration may drift for *up to a third* of an eight-hour
> workday." (Tr. 76, 77). The questions seem to differ only in the
> effect of that limitation with the ALJ pre-arranging the outcome.
> In the first hypothetical, the ALJ includes in the question that

---

[6]  ALJs must give each treating physician's opinion "substantial or considerable weight unless good cause is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotes and cite omitted). Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's medical records. *Id.* at 1240-41. When the ALJ discounts a treating physician's opinion, he must articulate his reasons for doing so. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); *see also* SSR 96–8p at 7 (1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."), *quoted in Miodonski*, 2014 WL 3656271 at * 5.

In contrast, the SSA regulations do not require ALJs, when evaluating the opinions of non-treating doctors and one-time examiners, to accord them any special deference or consideration. *See* 20 C.F.R. §§ 416.902, 416.927(c)(2); *Crawford*, 363 F.3d at 1160; *see also Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (ALJ does not have to defer to opinion of doctor who conducted single examination and who was not a treating doctor); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) (same).

Plaintiff "can pay enough attention to details to meet the general productivity requirements of the job." (Tr. 76). [The VE] accordingly testified that the hypothetical claimant will be able to return to the harvest worker job. *Id.* In the second hypothetical, the ALJ includes in the question that Plaintiff's "ability to perform work activities are going to be off task for up to one third of an eight-hour workday." (Tr. 77). [The VE] accordingly testified that the hypothetical claimant cannot perform any work. This is only to be expected as the ALJ included the limitation as well as the occupational result thereof in both questions. *The testimony of the vocational expert was rendered meaningless as identical occupational questions were posed with opposite results indicated.* That was improper and failed to provide substantial evidence to support the decision.

Doc. 20 at 5-6 (emphasis added).

The Court agrees with this argument. Substantively speaking, there at best is an insubstantial difference between the two hypothetical questions, rendering the VE's opinion worthless. While the harmless error doctrine must be considered,[7] the error here was

---

[7] *See Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 F. App'x 236, 239 (11th Cir. 2011) (any error by ALJ in mischaracterizing VE's testimony about applicant's former work and failing to pose to VE hypothetical that included all of applicant's limitations was harmless, given that substantial evidence supported that applicant could perform his former work as he actually performed it); *Jones v. Comm'r of Soc. Sec.*, 492 F. App'x 70, 73 (11th Cir. 2012) (ALJ's step-five error in failing to include claimant's driving limitation in hypothetical posed to VE was harmless because it did not affect outcome of case; functional requirements of jobs identified by VE, final assembler, lens-block gauger, and food and beverage order clerk, did not appear to involve driving, and claimant made no argument that essential function of any of those jobs included driving); *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885 (11th Cir. 2011) (error from ALJ's step two finding that claimant's mental impairments were not severe was harmless where ALJ deemed several of claimant's other medical impairments to be

not harmless. The ALJ directly relied on the VE's testimony. Doc. 16-2 at 20-21 ("In comparing the claimant's residual functional capacity with the physical and mental demands of this [past relevant work as a harvest worker] work, the undersigned finds the claimant is able to perform it as generally performed, based on the testimony given by the [VE] at the hearing."). But he failed to reconcile the internal contradiction contained within it (two opposing answers based on substantively the same hypothetical). The Court is thus unable to discern what weight the ALJ assigned to whatever subtle distinction he may perceive to exist between the two VE opinions. *Cf. Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 754 (6th Cir. 2011) ("The harmless-error doctrine cannot be stretched far enough to excuse the ALJ's failure to meaningfully indicate, even indirectly, how much weight he accorded the two treating sources . . . and why. It is not . . . the district court's role, to scour the record for evidence and expert reasoning which the ALJ might have relied on and which could support a finding of no-disability if the ALJ actually considered it."). Indeed,

---

severe and therefore continued on in the sequential inquiry); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding alleged step-two error harmless because ALJ considered impairments during subsequent steps), cited in 4 Soc. Sec. Law & Prac. § 55:63 (June 2014).

the ALJ failed to articulate what weight he gave the VE's testimony overall, and it obviously directly supports the end result -- that there was (no disability because Byrd can perform his past work. The ALJ's ruling is unsalvageable because it credits evidentially and logically unsupportable (indeed, "pre-arranged," as Byrd argues) VE opinions.

"When a court finds that there is no need for the record to be further developed and that the evidence necessarily points to a specific finding, the reviewing court may enter the finding that the Commissioner should have made in the first instance. *See Venette v. Apfel*, 14 F. Supp. 2d 1307, 1315 (S.D. Fla. 1998)." *Miodonski*, 2014 WL 3656271 at * 7. That isn't the case here, and Byrd recognizes that by seeking no judgment in his favor but instead a remand, to which he is now entitled. Doc. 20 at 9.

## B. Dr. Bate's Opinion

Byrd raises another issue worth reaching now, since it fails and reaching it now will streamline the remand. He contends that the ALJ also committed legal error by not properly analyzing Dr. Bate's disability opinion. Doc. 20 at 9. Byrd says Bate completed a questionnaire on Byrd's behalf in October 2011 and diagnosed him with

paranoid ideation, intermittent auditory and visual hallucinations," *id.* at 7; *see also* doc. 18 at 124, then determined that Byrd "had marked difficulties in social functioning." Doc. 20 at 7. Bate's "Physicians Follow Up Assessment" responses reflect his opinion that Byrd was disabled from "approximately 2004" through Bate's October 13, 2011 signature date. Doc. 18 at 124.

But as the ALJ pointed out, the record shows that Dr. Bate did not begin treating plaintiff until 2011. Doc. 16-2 at 20; *see also* doc. 18 at 118 (Bate's "9/15/11" assessment noting "Patient last seen 7/11"). Byrd does not dispute this in his brief. Doc. 20 at 7-9. Nor does Byrd dispute the ALJ's notation that Byrd's 2011 appointment and assessment constitutes his *only* contact with Dr. Bate, who himself noted that it was a benefits-quest visit. Doc. 18 at 120 ("43 year old single BF *who is trying to get disability. . . .*") (emphasis added); *see also Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (substantial evidence supported ALJ's decision to give less weight to opinion of treating physician who "relied too significantly on [claimant's] subjective reports"). Because Dr. Bate did not have an ongoing treating relationship with plaintiff, the ALJ was authorized to

conclude that he was not a treating physician and thus his findings and opinions (especially that Byrd was unable to work since 2004) were not entitled to any special deference or consideration. *Phillips,* 357 F.3d at 1240; *Denomme v. Comm'r, Soc. Sec. Admin.,* 518 F. App'x 875, 878 (11th Cir. 2013) ("The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician.").

Other grounds supported the ALJ's refusal to accord such weight to Bate's opinion. Bate opined that Byrd had only a limited ability to maintain social functioning, but that is inconsistent with the record as a whole, including Dr. Bate's own notes. Doc. 16-2 at 20. As the ALJ discussed, Dr. Bate did not note any observations that plaintiff had difficulty relating to him or his staff. Doc. 18 at 118-22. It is true, as Byrd points out (doc. 20 at 8), that Bate and his staff may be accustomed to difficult patients, but Byrd's other medical providers failed to note any difficulties relating to him, and they consistently noted that he was cooperative, pleasant, and related well when assessing his behavior. *See, e.g.,* doc. 18 at 22-26; *id.* at 31 (finding "no objective medical findings to support a significant limitation in the

patient."); *id.* at 35 ("no sig abnormality"); *id.* at 37 ("no sig impairment" and "schizophrenia appears well controlled on meds"); *id.* at 38-42, 47 ("his limitations are not of sufficient severity to preclude the ability to sustain simple, unskilled work at this time").

The ALJ was authorized to note and use such inconsistencies to support his decision which, again, needs only "something more than a mere scintilla, but less than a preponderance" to be upheld here. *Dyer*, 395 F.3d at 1210. He also noted from Byrd's records that his symptoms were reduced when he was around other people. Doc. 20 at 20; *see also* doc. 18 at 80 (2010: "He presents in stable mood, thoughts are clear and relevant"); doc 18-1 at 12 ("Relates adequately. Good eye contact. Speech has regular rate, rhythm and volume; not pressured. Thinking concrete. Paucity of thought. No psychomotor agitation or retardation."). And medication improved his symptoms as well. *See King v. Comm'r of Soc. Sec.*, 550 F. App'x 781, 783 (11th Cir. 2013) ("A condition that is controlled by medication may not be a substantial limitation for purposes of a claimant's RFC").

Furthermore, Byrd was also able to work for over a half decade with his mental impairment, which was diagnosed in 1999 or 2000.

Doc. 16-2 at 20. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (noting claimant worked for two years after his accident, which undermined the credibility of his complaints). Hence, Dr. Bate's assessment of marked limitations in social functioning is inconsistent with the record as a whole, and the ALJ was authorized to reject it. In sum, the ALJ cited ample reasons to discount Dr. Bate's opinion; his ruling is supported by substantial evidence and must be upheld on that score.

## IV.  CONCLUSION

Based on the foregoing, the Court should **REVERSE** the Commissioner's decision under sentence four of 42 U.S.C. § 405(g) and **REMAND** this case for further consideration consistent with this opinion. *See Shalala v. Schaefer*, 509 U.S. 292, 296-97 (1993). The Clerk should be directed to enter a separate judgment pursuant to Federal Rule of Civil Procedure 58.

**SO REPORTED AND RECOMMENDED** this /4TH day of August, 2014.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA